## KENNARD C. KOBRIN *vs.* BOARD OF REGISTRATION IN MEDICINE.

Suffolk. May 5, 2005. - August 11, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, COWIN, SOSMAN, & CORDY, JJ.

*Board of Registration in Medicine. License. Doctor,* License to practice medicine. *Medicaid. Fraud. Res Judicata. Due Process of Law,* Revocation of license, Administrative hearing. *Administrative Law,* Adjudicatory proceeding, Hearing, Substantial evidence. *Practice, Civil,* Stay of proceedings.

Discussion of the Board of Registration in Medicine's statutory and regulatory authority to take action against a physician who has been convicted of a crime. [841]

Discussion of the standard of review applicable to a decision of the Board of Registration in Medicine revoking a person's license to practice medicine. [841-842]

Neither claim preclusion nor issue preclusion barred disciplinary proceedings instituted by the Board of Registration in Medicine (board) to revoke a physician's license to practice medicine based on his convictions of two counts of violating G. L. c. 118E, § 40 (2) (Medicaid fraud), for the testing referral of two patients, despite the fact that those same patients were the subject of an earlier proceeding in which the board had dismissed charges against the physician pertaining to substandard patient care, where the statement of allegations in the earlier proceeding was addressed only to the physician's illegally prescribing drugs, while the sole basis for the current disciplinary action was the physician's two criminal convictions, which occurred more than two years after the board's earlier decision; and where the criminal convictions were distinct from the conduct, and the physician could be disciplined on the basis of the convictions alone. [842-845]

In a proceeding of the Board of Registration in Medicine (board) to revoke a physician's license to practice medicine based on the physician's convictions of two counts of violating G. L. c. 118E, § 40 (2) (Medicaid fraud), in which the board relied on the summary decision of a magistrate in making its ruling, the physician was not entitled to an adjudicatory hearing whereby he could present evidence concerning the wrongfulness of his convictions, where neither G. L. c. 112, § 5, nor due process required the board to hold a hearing to take evidence concerning undisputed facts presented to the magistrate, and where the physician was afforded his right to allocution; moreover, the board fulfilled its obligation to state the reasons for its decision, which was based on substantial evidence. [845-850]

A single justice of this court properly denied a petitioner's motion to stay an

administrative decision pending his appeal from his criminal convictions. [851]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 15, 2004.

The case was reported by *Spina*, J.

*George C. Deptula* for the defendant.

*James J. Arguin*, Assistant Attorney General, for the plaintiff.

IRELAND, J. In December, 2002, a jury convicted Kennard C. Kobrin (petitioner) of two counts of violating G. L. c. 118E, § 40 (2) (Medicaid fraud).[1] On November 17, 2004, the Board of Registration in Medicine (board) revoked the petitioner's license to practice medicine. The petitioner appealed to a single justice of this court, who denied a motion to stay the board's decision pending the appeal of his criminal convictions and then reserved and reported the case without decision. The petitioner argues that principles of res judicata prevented the board from using the convictions as a basis to revoke his licence, makes various claims concerning the lawfulness of the board's procedure, and claims that the board's decision was arbitrary and not supported by substantial evidence. Because we conclude that the board properly relied on the convictions as proof of the petitioner's guilt in its decision to revoke his license, that the administrative process the petitioner received was proper, and that the decision of the board was not arbitrary and was supported by substantial evidence, we affirm the decision of the board and affirm the denial of the petitioner's motion to stay the board's decision.

*Facts and procedural background.* We present facts from the record, leaving some details for our discussion of the issues. The petitioner has been licensed to practice medicine in Massachusetts since 1979, and is board certified by the American Board of Medical Specialties in psychiatry. He practiced in Fall River. In 1998, fourteen indictments, containing multiple counts, issued against the petitioner for violations of G. L. c. 118E, §§ 40 (2) and 41, as well as for violations of G. L. c. 94C,

---

[1]The petitioner appealed. The Appeals Court has stayed the appeal while his motion for a new trial is being considered by the trial judge.

§§ 32D and 32B. The Commonwealth nol prossed sixteen counts and the petitioner's motion for required findings of not guilty was allowed for twenty-one counts. The jury found him guilty on three counts, including two counts of violating G. L. c. 118E, § 40 (2).[2] The latter convictions concerned his referring two patients to Dr. Richard Greene, a psychologist who conducted tests that were unnecessary.

In May, 2003, the judge sentenced the petitioner to two concurrent suspended sentences of eighteen months to a house of correction, three years' probation, and 750 hours of community service. He also imposed $10,000 in fines. In his memorandum of decision on sentencing, the judge stated, "[T]he evidence disclosed that . . . unnecessary tests served as a means for [the petitioner] to secure rental and service income from tenant-clinicians[3] happy to use the space under arrangements generating a steady flow of government revenue. Such a scheme profoundly alienates the public about the value of government programs for the poor which rely on taxpayer funds." The judge also noted that he was not intruding on the board's authority to impose its own sanctions. The judge denied the petitioner's request for a stay of sentence until the Appeals Court ruled on his appeal from his convictions, as did a single justice of the Appeals Court.

Based on the convictions of Medicaid fraud, in September, 2003, the board issued a statement of allegations against the petitioner and referred the matter to the division of administrative law appeals (DALA) for a hearing. In January, 2004, the petitioner filed an answer in which he admitted that he was convicted and sentenced, but contested the validity of the convictions. Following a prehearing conference, he filed several motions to dismiss and a motion to stay the proceedings.

Instead of proceeding to a hearing, counsel for the board (complaint counsel) filed a motion for summary decision pursuant to 801 Code Mass. Regs. § 1.01(7)(h) (1998), stating that

---

[2]The petitioner also was convicted of one count of violating G. L. c. 94C, § 32B, in connection with his prescribing Klonopin to a patient, but the board did not use that conviction as a basis for issuing its statement of allegations against the petitioner.

[3]Dr. Greene was the petitioner's tenant.

there was no genuine issue of material fact concerning the petitioner's convictions of Medicaid fraud. The petitioner filed an opposition to this motion, arguing that there were five legal and factual issues precluding summary decision.[4] His request for leave to conduct discovery aimed at demonstrating the invalidity of his convictions was denied.

In August, 2004, an administrative magistrate (magistrate) found no disputed material facts concerning the petitioner's convictions, rejected his legal arguments, including those made by motion, and recommended that the board impose discipline pursuant to G. L. c. 112, § 5 (*g*), and 243 Code Mass. Regs. § 1.03(5)(a)(7) (1994). The board notified the parties that it would hold a hearing concerning the appropriate disposition and invited them to submit memoranda on the disposition, but the scope was limited to matters contained within the record. Each side was allowed ten minutes to address the board. The petitioner submitted his objections to the magistrate's decision, a motion for remand and reconsideration (which the board opposed), and a memorandum on disposition. In addition to his disposition memorandum, the petitioner submitted a personal statement and an affidavit concerning the circumstances surrounding his convictions (with supporting documentation), as well as affidavits and letters from other physicians attesting to his fitness to practice psychiatry and their belief that his convictions for the testing referrals were inappropriate. The petitioner also submitted a motion to stay the disposition of his case until his criminal appeal was resolved.

In addition to a disposition memorandum, complaint counsel also submitted a motion to strike the petitioner's affidavit and several exhibits the petitioner attached to his memorandum on the ground that they were beyond the scope of the record. The board denied the motion, ruling that it would consider them only as they related to the issue of sanctions.

Although there is no transcript of this hearing, the petitioner

[4]He argued that there were issues concerning (1) the board's authority to use the convictions against him, (2) the validity of his convictions, (3) his pending appeal from the convictions, (4) a need for a fact-finding hearing so that the board had a basis to determine whether and what sanction was appropriate, and (5) the need to establish a full record for judicial review of any decision the board made.

states that his argument exceeded the time the board allocated. He also states in his reply brief that he submitted "additional information."

The board issued its final decision and order on November 17, 2004. It adopted the magistrate's recommended decision, adding that it had the authority to discipline a physician whose conduct undermines public confidence in the integrity of the profession, had a duty to police the profession, and had disciplined other physicians in similar circumstances. After considering all the mitigating factors the petitioner provided, the board revoked the petitioner's license. The petitioner filed a petition for judicial review with a single justice of this court. G. L. c. 112, § 64. He also filed an emergency motion requesting, among other things, that the single justice stay the board's order pending appeal from his criminal convictions, which was denied. The petitioner filed an interlocutory appeal from the single justice's decision and an unopposed motion to reserve and report his petition to the full court. The single justice allowed the motion to reserve and report and consolidated the matters.

*Discussion.* 1. *The board's authority.* The board has both statutory and regulatory authority to take action against a physician who has been convicted of a crime. See G. L. c. 112, § 5 (*g*) (authorizing sanctions where "proof . . . physician . . . has been convicted of a criminal offense which reasonably calls into question his ability to practice medicine"); 243 Code Mass. Regs. § 1.03(5)(a)(7) ("complaint against a physician . . . may be founded on . . . [c]onviction of any crime"). See also *Raymond* v. *Board of Registration in Med.*, 387 Mass. 708, 710-711 (1982). The board also has the authority to discipline a physician whose conduct undermines the public confidence in the integrity of the medical profession or who lacks good moral character. *Id.* at 713, citing *Levy* v. *Board of Registration & Discipline in Med.*, 378 Mass. 519, 528 (1979).

2. *Standard of review.* A person whose license to practice medicine has been revoked may petition the court for review. G. L. c. 112, § 64. The court may modify or set aside the board's final decision only if the petitioner demonstrates that the decision was not in accordance with standards set forth in

G. L. c. 30A, § 14 (7). *Weinberg* v. *Board of Registration in Med.*, 443 Mass. 679, 685 (2005). Moreover, the court will not substitute its own judgment concerning the penalty the board imposes. *Levy* v. *Board of Registration & Discipline in Med.*, *supra* at 528-529.

3. *Res judicata.* We begin by providing background to the petitioner's claim that the board could not proceed against him because of principles of res judicata and collateral estoppel.

In March, 1999, following the 1998 indictments, the board issued a statement of allegations against the petitioner, stating that it had reason to believe that he was illegally prescribing drugs. On the same day, complaint counsel filed a memorandum in support of summarily suspending the petitioner, and the petitioner was suspended. In the memorandum, complaint counsel explicitly stated that authority was lacking for the board to consider the indictments for Medicaid fraud for purposes of summary suspension.[5] The board referred the matter to DALA. An administrative magistrate held a hearing and recommended that the summary suspension be stayed until a full hearing could be held and a final decision issued.

Subsequently, a hearing on the statement of allegations was held before the magistrate. The recommended decision stated that the petitioner was charged with illegally prescribing drugs (benzodiazepines) "and otherwise render[ing] substandard psychiatric care to 12 patients during the 1990's."[6] The magistrate described the standard of care as "a broad concept that includes a variety of approaches to a variety of clinical problems," and stated that the "Physicians' Desk Reference . . . reflects the standard of care in terms of prescribing dosages and ranges [of medicines]." The magistrate concluded that the board had "not met its burden of proving by substantial, competent evidence that [the petitioner] illegally prescribed benzodiazepines and otherwise rendered substandard psychiatric care to

---

[5]Complaint counsel stated that summary suspension is appropriate only for behavior that directly jeopardizes public health or safety by threatening patients' lives, limbs, or mental stability. 243 Code Mass. Regs. § 1.03(11) (1993).

[6]Testing referrals of two of those patients formed the basis of the petitioner's convictions of Medicaid fraud.

12 patients," and recommended the dismissal of the statement of allegations. On September 13, 2000, the board issued a final decision and order, adopting the magistrate's recommendation and dismissing the matter against the petitioner. See generally *Kobrin* v. *Gastfriend*, 443 Mass. 327 (2005). The petitioner argues that because the board dismissed the charges against him pertaining to substandard patient care in 2000, it cannot now discipline him for convictions relating to Medicaid fraud for the testing referral of two of the same patients who were the subject of the previous hearing. We disagree.

The term "res judicata" includes both claim preclusion and issue preclusion. See *Heacock* v. *Heacock*, 402 Mass. 21, 23 n.2 (1988). "Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." *O'Neill* v. *City Manager of Cambridge*, 428 Mass. 257, 259 (1998), quoting *Blanchette* v. *School Comm. of Westwood*, 427 Mass. 176, 179 n.3 (1998). This "is 'based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit.' " *O'Neill* v. *City Manager of Cambridge, supra*, quoting *Heacock* v. *Heacock, supra* at 24. The invocation of claim preclusion requires three elements: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." *DaLuz* v. *Department of Correction*, 434 Mass. 40, 45 (2001), quoting *Franklin* v. *North Weymouth Coop. Bank*, 283 Mass. 275, 280 (1933).

Similarly, issue preclusion "prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." *Heacock* v. *Heacock, supra* at 23 n.2. Before precluding a party from relitigating an issue, "a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication." *Tuper* v. *North Adams Ambulance Serv., Inc.*, 428 Mass. 132, 134 (1998),

and cases cited. "Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment." *Id.* at 134-135, and cases cited. Issue preclusion can be used only to prevent relitigation of issues actually litigated in the prior action. See *Fidelity Mgt. & Research Co.* v. *Ostrander*, 40 Mass. App. Ct. 195, 199 (1996). Accordingly, we look to the record to see what was actually litigated. See *Gleason* v. *Hardware Mut. Cas. Co.*, 324 Mass. 695, 699 (1949).

Moreover, it is not necessary that the prior adjudication have been before a court. Rather, if the proponent for preclusion proves that the elements for preclusion are met, "[a] final order of an administrative agency in an adjudicatory proceeding . . . precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction." *Tuper* v. *North Adams Ambulance Serv., Inc.*, *supra* at 135, quoting *Stowe* v. *Bologna*, 415 Mass. 20, 22 (1993).

In this case, although there is no question that there was a final order of the board on the merits in 2000, and the parties in both actions are identical, we conclude that neither claim preclusion nor issue preclusion bars the disciplinary proceedings of the board. The board dismissed the 2000 charges because a magistrate concluded that the petitioner had not illegally prescribed drugs or otherwise rendered substandard care to his patients. The only mention of the Medicaid fraud at that time was in the board's memorandum in support of the motion for summary suspension, where it acknowledged that the petitioner also had been charged with submitting false Medicaid claims and violating the "antikickback" statute, but that those matters could not be considered as a basis for summary suspension. The statement of allegations was addressed only to the petitioner's illegally prescribing drugs.

The sole basis for the current disciplinary action is the petitioner's two criminal convictions of Medicaid fraud. The petitioner was convicted in December, 2002, more than two years after the board issued its decision concerning substandard care of his patients. Thus, it is clear that the board could not previously have litigated this issue or disciplined the petitioner as the convictions had not yet occurred.

Moreover, contrary to the petitioner's argument, the criminal conviction is distinct from the conduct. Under G. L. c. 112, § 5 (g), and 243 Code Mass. Regs. § 1.03(5)(a)(7), the board may revoke a physician's license on proof that the he has been convicted. Moreover, the board may discipline a physician whose conduct undermines the integrity of the profession. *Levy* v. *Board of Registration & Discipline in Med.*, 378 Mass. 519, 528 (1979). Clearly, being convicted of Medicaid fraud "undermines the public's confidence in the integrity of the medical profession." *Raymond* v. *Board of Registration in Med.*, 387 Mass. 708, 713 (1982). See *Levy* v. *Board of Registration & Discipline in Med.*, *supra* at 526-527 (criminal conviction of intentional misdeeds concerning third-party payors "reflects adversely on a physician's fitness to practice medicine").

Therefore, as the criminal convictions occurred after the previous proceeding and the petitioner could be disciplined simply on the basis of the convictions alone, the disciplinary action was not barred by either claim or issue preclusion.

4. *Lawfulness of the board's procedures.* The petitioner argues he was entitled to an adjudicatory hearing whereby he could present evidence concerning the wrongfulness of his convictions. In essence, the petitioner argues that the board erred in relying on the summary decision of the magistrate. He contends that, at the very least, he was entitled to an adjudicatory proceeding at his disposition hearing. Our discussion of the propriety of the summary decision process will necessarily address some of the petitioner's arguments concerning the disposition hearing.

There is no doubt that both G. L. c. 112, § 5,[7] and due process require that the petitioner be given a hearing. *Goldstein* v. *Board of Registration of Chiropractors*, 426 Mass. 606, 613 (1998), and cases cited (due process rights implicated in adjudicatory proceeding in which license could be revoked). However, the requisite hearing need not comport with a particular form, as long as it is appropriate to the nature of the case. *Id.* at 615, citing *Langlitz* v. *Board of Registration of Chiropractors*, 396 Mass. 374, 376-377 (1985) ("administrative deprivation of a professional license must be preceded by notice and an op-

[7]General Laws c. 112, § 5, provides that, after a hearing pursuant to G. L. c. 30A, the board may sanction a physician for a disciplinary offense.

portunity to be heard appropriate to the nature of the case"). Moreover, in *Veksler* v. *Board of Registration in Dentistry*, 429 Mass. 650 (1999), the court held that a dentist convicted of Medicaid fraud and who had conceded her guilt had, pursuant to the plain language of G. L. c. 112, §§ 52D and 61, "a right of allocution, 'the right to present mitigating factors prior to sentencing.' " *Id.* at 652, quoting *Commonwealth* v. *Rancourt*, 399 Mass. 269, 278 (1987). The *Veksler* court further stated that the dentist, who was seeking a sanction that accounted for her individual circumstances, was entitled to present evidence to the board to explain her actions. *Id.* at 652.

Given these principles and the holding in the *Veksler* case, the petitioner was entitled to a hearing to present mitigating factors, an explanation of his actions, and to address the issue of the appropriate sanction. However, neither the statute nor due process required the board to hold a hearing to take evidence concerning undisputed facts. Such a hearing would be a meaningless exercise. See *Codd* v. *Velger*, 429 U.S. 624, 627-629 (1977) (due process does not require hearing where there is no factual dispute between parties); *Massachusetts Outdoor Advertising Council* v. *Outdoor Advertising Bd.*, 9 Mass. App. Ct. 775, 785-786, 789 (1980) (administrative summary decision procedures for permit renewals do not offend hearing requirements of G. L. c. 30A, § 13, where hearing would be meaningless). See generally *Rockdale Mgt. Co.* v. *Shawmut Bank, N.A.*, 418 Mass. 596, 600 (1994) (no evidentiary hearing required on motion to dismiss where no contested issues and where notice and opportunity to be heard was afforded); *Walden* v. *Board of Registration in Nursing*, 395 Mass. 263, 272 n.4 (1985) (no violation of due process where nurse admitted that she did not sign requisite tax certification form and was denied hearing on her competence to practice nursing).

In his answer to the statement of allegations, the petitioner admitted that he had been convicted and sentenced. The magistrate was entitled to rely on the conviction as the conclusive "proof," required by G. L. c. 112, § 5, that the petitioner had been convicted of Medicaid fraud, which reasonably called into question his ability to practice medicine. See *Feldstein* v. *Board of Registration in Med.*, 387 Mass. 339, 341

(1982) (conviction of Medicaid fraud reflects on ability to practice medicine); *Levy* v. *Board of Registration & Discipline in Med., supra* at 526-527 (intentional misdeed concerning third-party payors reflects adversely on ability to practice medicine). The conduct also undermines the public's ability to trust the integrity of the profession. *Raymond* v. *Board of Registration in Med.,* 387 Mass. 708, 710, 712-713 (1982), citing *Levy* v. *Board of Registration & Discipline in Med., supra* at 528 (convictions of possession of unregistered firearms undermines public trust in integrity of profession and "board has the authority to protect image of the profession"). No proof of actual harm to patients, or demonstration that the public has lost confidence in the medical profession, was necessary. *Sugarman* v. *Board of Registration in Med.,* 422 Mass. 338, 346 n.15 (1996), citing *Aronoff* v. *Board of Registration in Med.,* 420 Mass. 830 (1995).

The arguments the petitioner presented to the magistrate in his opposition to the motion for summary decision concerning the validity of his convictions were collateral attacks on the convictions themselves and, therefore, were properly rejected. Our conclusion is consistent with the holdings in cases concerning the board's right to give preclusive effect to decisions of other State medical licensing boards and with our decisions concerning convictions of attorneys. See *Ramirez* v. *Board of Registration in Med.,* 441 Mass. 479, 482-483, 486 (2004) (where physician entered into consensual discipline order in foreign jurisdiction, board need not be burdened with trying case); *Haran* v. *Board of Registration in Med.,* 398 Mass. 571, 575 (1986) (physician whose license was revoked by foreign jurisdiction had no right to "disprove" finding of negligence and professional incompetence before board). See also *Matter of an Application for Admission to the Bar, ante* 393, 399 (2005) (board erred in allowing applicant for bar admission, who pleaded guilty to felonies, to present evidence of his "innocence" as part of his admission hearing); *Matter of Concemi,* 422 Mass. 326, 328-329 (1996), quoting *Matter of Hiss,* 368 Mass. 447, 450 (1975) (attorney's conviction of felonies precluded board from considering facts concerning guilt).

The petitioner acknowledges that he should not be allowed

collaterally to attack the convictions on the merits, but argues that his case is an exception to this rule because the subject matter jurisdiction of the trial court was questionable. He contends that the documentary evidence used at his trial to prove Medicaid fraud only contained coded references to Medicare, not Medicaid, and thus the State court was without jurisdiction. This argument has no merit. The issue may properly be viewed as one concerning the weight of the evidence, rather than an issue of subject matter jurisdiction. However, even if the trial court lacked jurisdiction, this is hardly the plain usurpation of power required to render a judgment void. *Harris* v. *Sannella*, 400 Mass. 392, 395 (1987), and cases and authorities cited.[8]

Because the magistrate properly could rely on the petitioner's convictions as proof that he engaged in conduct that called into question his ability to practice medicine, there was no issue of material fact for which a hearing was required. The board could, therefore, properly rely on the summary decision for findings of fact. 801 Code Mass. Regs. § 1.01(7)(h). See generally *Haran* v. *Board of Registration in Med.*, 398 Mass. 571, 580 n.6 (1986) (no violation of G. L. c. 30A, § 14 [7], where hearing officer's summary decision relied on finding of foreign jurisdiction's disciplinary proceeding).

The petitioner argues that his disposition hearing should have included an adjudicatory hearing so that he could present evidence regarding "issues of allocution."[9] Most of the issues on which the petitioner wanted to present evidence involved res

---

[8]The petitioner argued this issue in his motion for required findings of not guilty, which the judge denied. The petitioner raised this issue again in his pending motion pursuant to Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 (2001), and on appeal from his convictions.

[9]The petitioner also claims that the magistrate's recommended decision erroneously stated twice that the petitioner was found guilty of filing false Medicaid claims, whereas he was found guilty of Medicaid fraud by referring patients to a psychologist. Although the magistrate misstated the crime of which the petitioner was convicted, she stated it properly elsewhere in her recommended decision, including in her findings of fact. The petitioner brought this error to the attention of the board in his objections to the recommended decision, his motion for remand and reconsideration, and his memorandum on disposition. In addition, the verdict form and indictments were part of the administrative record, which the board incorporated by

judicata (discussed *supra*), the validity of his convictions, and the ability of the board to rely on his convictions to determine that Medicaid fraud reflected on his fitness to practice medicine. For the reasons discussed, the board was not required to include an evidentiary component at the disposition hearing.

As also discussed, however, the statute and due process entitled the petitioner to a hearing concerning the appropriate sanction and to present mitigating factors or explain his actions. See *Veksler* v. *Board of Registration in Dentistry*, 429 Mass. 650, 652 (1999). We conclude that the petitioner was afforded his right to allocution. Indeed, in his memorandum on disposition and accompanying documents, statements, and affidavits (including affidavits and letters from other physicians and experts) the petitioner argued, inter alia, that he was fit to practice medicine, had a legitimate reason for making the patient referrals, and was valuable to the Fall River community; that the judge continued to allow him to practice; and that his convictions, even if valid, were different from other Medicaid fraud because he was not the one who submitted the false claims — Dr. Greene was. In his affidavit and personal statement the petitioner argued that his convictions were not valid. He also submitted a draft of his motion for a new trial, which addressed the reasons his convictions were allegedly invalid. Moreover, the board had before it, inter alia, the petitioner's objections to the summary decision and his motion for remand and reconsideration, with their accompanying exhibits. In denying complaint counsel's motion to strike the exhibits, the board stated that it would consider the petitioner's exhibits as they related to the issue of sanctions. The petitioner also was given an opportunity to argue before the board concerning the appropriateness of sanctions. Given these circumstances, we conclude that the board did not deny the petitioner his due process rights.[10]

---

reference. There is no reason to believe that the board misapprehended the basis for the convictions.

The petitioner also argues that the magistrate improperly referred to his convictions as "serious." There was no error. See G. L. c. 274, § 1; G. L. c. 118E, § 40.

[10]The petitioner states that, even though he argued for more than the ten minutes allotted by the board, this was not enough time. He has submitted no transcript, and, therefore, we need not consider this argument.

We need not belabor the petitioner's argument that the board's decision was arbitrary and not based on substantial evidence because most of the petitioner's arguments are based on the premise that he was entitled to an evidentiary hearing, that the board could not rely on his convictions, and that his convictions did not reflect negatively on his ability to practice medicine, all of which we have addressed.

The petitioner also argues that the board's statement that it considered all mitigating factors presented by the petitioner and concluded that they did not outweigh the severity of his crimes, is inadequate and that the sanction does not fit the crimes of which he was convicted. He asserts that the board's punishment should have taken into account, at the very least, that there are different kinds of Medicaid fraud, and that his convictions did not involve fraud by him, but by Dr. Greene, making the petitioner less culpable.

The board fulfilled its obligation to state the reasons for its decision. See generally *Hamilton* v. *Department of Pub. Utils.*, 346 Mass. 130, 137 (1963) (G. L. c. 30A, § 11 [8], requires that decision be accompanied by statement of reasons, determination of relevant issues of law and fact, and adequate subsidiary findings). The board adopted the findings of the magistrate. See *Arthurs* v. *Board of Registration in Med.*, 383 Mass. 299 (1981) (board's adoption of hearing officer's reason for decision fulfils requirement of G. L. c. 30A, § 11 [8]; board not required to rebut each of physician's objections). In addition, the board's statement that it has disciplined other physicians for similar conduct and that its sanction is for each violation and not for a combination of them supports its statement that it considered all mitigating factors and its conclusion that those factors did not outweigh the severity of the petitioner's criminal convictions. See *Weinberg* v. *Board of Registration in Med.*, 443 Mass. 679, 687 (2005) ("board is not required to address each and every legal issue, theory, and case citation relied on" by physician). In addition, the petitioner has not demonstrated any "extraordinary . . . circumstances" that would justify our interference in the board's exercise of its discretion in terms of the sanction itself. *Id.*, quoting *Levy* v. *Board of Registration & Discipline in Med.*, 378 Mass. 519, 528-529 (1979).

*5. Petitioner's motion to stay.* We affirm the single justice's denial of the petitioner's motion to stay the board's decision pending his appeal from his criminal convictions. The petitioner offered no argument in support of his motion that is different from the arguments he made in support of his appeal from the board's decision. Those arguments have been addressed in this opinion; nothing further need be said.[11]

*Conclusion.* For the reasons stated, we affirm the decision of the board revoking the petitioner's license to practice medicine and affirm the denial of the petitioner's motion for a stay.

*So ordered.*

---

[11]In its brief, the board states that if the petitioner's convictions were reversed on appeal, he could file a petition for reinstatement pursuant to 243 Code Mass. Regs. § 1.05(4) (1993).